**Petition of ROSENMAN COLIN FREUND LEWIS & COHEN for an Adjudication of its Rights in the Matter of**

**Julian SHERRIER, Plaintiff,**

**v.**

**Bernice RICHARD, Defendant.**

**No. 82 Civ. 3723 (RWS).**

United States District Court,
S.D. New York.

Sept. 25, 1986.

Rosenman Colin Freund Lewis & Cohen, New York City, pro se; J. Kelley Nevling, Jr., Steven M. Dixon, of counsel.

Brown & Seymour, New York City, for respondent; Whitney North Seymour, Jr., Claude P. Bordwine, of counsel.

SWEET, District Judge.

The present proceeding is brought by Petitioner Rosenman Colin Freund Lewis & Cohen ("Rosenman") to establish an attorney's lien on a judgment entered in favor of its client, respondent Bernice Richard ("Richard"). Richard has moved for a stay of all proceedings in this matter until final judgment is entered in her malpractice action against petitioner Rosenman, presently pending in New York Supreme Court. For the reasons stated below, Richard's motion is denied.

**Prior Proceedings**

The prior proceedings and facts of this ongoing controversy are fully set out in this court's decision in *Sherrier v. Richard,* reported at 564 F.Supp. 448 (S.D.N.Y. 1983) ("the underlying action"), and *Petition of Rosenman Colin Freund Lewis & Cohen for an adjudication of its rights in the matter of Sherrier v. Richard,* reported at 600 F.Supp. 527 (S.D.N.Y.1984). *Sherrier v. Richard* was litigated before this court in October, 1982, with Rosenman acting as counsel for Richard. In May, 1983, Richard brought an action against Rosenman in New York State Supreme Court by serving a summons without complaint seeking damages for breach of contract, breach of fiduciary obligations and negligence. It was removed by Rosenman to this court on May 31, 1983.

Rosenman then commenced the present proceeding by petition (the "Petition") served and filed on June 17, 1983, seeking to establish an attorney's lien on the judgment entered by this court in *Sherrier v. Richard* for the amount of its unpaid fees ($270,222.59) and disbursements ($34,750.46) and to enforce its lien against the judgment. On June 27, 1983 Richard served an answer to the Petition which denied that she was liable to Rosenman and raised various affirmative defenses. The answer also stated three counterclaims based on Rosenman's alleged breach of

contract, breach of fiduciary relations and fraud in its defense of the *Sherrier* action, thereby replicating Richard's state court claims.

In January, 1984, Richard voluntarily dismissed her pending state court claim. On May 17, 1984 Richard filed an amended answer which omitted the three counterclaims and added a ninth and tenth affirmative defense. Rosenman moved to strike all affirmative defenses, and on December 21, 1984, this court granted that motion as to all but the eighth affirmative defense, which sought to limit any Rosenman recovery to *quantum meruit.* That defense remained to be employed in the event that the retainer agreement was found under the cited state authorities to be unenforceable. *See* 600 F.Supp. 527. The ninth affirmative defense sought an offset for Richard's claims of malpractice and breach, "which are the subject of a separate proceeding." Although the December 21, 1984 opinion regrettably failed to clarify the dismissal of this affirmative defense, there was at the time no separate proceeding and therefore no offset.

Richard then commenced her present pending malpractice action in New York Supreme Court on June 4, 1985. The complaint states five separate causes of action concerning Rosenman's representation of Richard in the underlying action: (1) negligence or malpractice, (2) breach of contract, (3) breach of fiduciary duty, (4) fraud, and (5) violations of the New York Judiciary Law. Richard seeks damages in excess of $7,500,000. On June 24, 1985, Rosenman removed that action to this court, but Richard then moved to have the case remanded to state court. On September 30, 1985, that motion was granted pursuant to the court's discretionary power to decline to hear issues that would substantially expand the scope of the action into areas of state law. *See Richard v. Rosenman Colin Freund Lewis & Cohen,* 85 Civ. 4859 (S.D.N.Y. October 2, 1985) [Available on WESTLAW, DCTU database].

In the state court action, Rosenman moved to make the complaint more definite

and to strike certain improper matters and Richard cross-moved to disqualify Rosenman from representing itself *pro se*. Both motions were denied, but Richard has appealed the denial of her cross-motion to the Appellate Division and has perfected her appeal for the September, 1986 term. In April, 1986, Rosenman moved for a dismissal or stay of the state court action pending the final determination of this action. That motion was argued before the Honorable Walter B. Scheckman of the State Supreme Court on May 22, 1986 and decision is pending.

Rosenman has not yet answered the complaint in the state court action. Richard has made a request for production of documents, but Rosenman has moved for a protective order with respect to that request. The only other discovery documented by the parties in their moving papers are the five depositions taken in the federal court action which, by stipulation, were deemed also taken in the state court action. Richard also states that any document discovery in the federal court action has been deemed by stipulation to have occurred in the state court action as well. According to Rosenman, that discovery consists of four requests for documents and subsequent production by both parties.

## Discussion

Two decisions of the Supreme Court set forth the standards governing whether a federal court should stay litigation before it in deference to a related action pending in state court. In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the court adopted guidelines for determining when a federal court should dismiss a federal action in favor of a state court action, and in *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), it held that the same standards should be applied where the remedy sought is a stay rather than dismissal, since "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Id.* at 28, 103 S.Ct. at 943.

In *Colorado River*, the court addressed the abstention doctrine, under which a district court may decline to exercise or postpone its exercise of jurisdiction:

[A]bstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 [79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166] (1958).

424 U.S. at 813, 96 S.Ct. at 1244. The court then discussed the three general categories of abstention recognized in its previous decisions: (1) where a "federal constitutional issue ... might be mooted or presented in a different posture by a state court determination of pertinent state law," *id.* at 814, 96 S.Ct. at 1244; (2) where "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *id.*, and (3) where "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings" or certain state enforcement proceedings, *id.* at 816, 96 S.Ct. at 1245.

The present case is not within the first and third categories. While the contention that this case falls within the second category has some weight under the peculiar posture of this case, it fails to carry the day. In the first place, abstention is only appropriate under that standard when the state law claims are "difficult" and their "importance transcends the result" in the individual case. By contrast, the instant claim for attorneys' fees involves well-settled questions of law, which federal courts apply on a regular basis, and not the kind of policy issues to which the Supreme Court refers. *See also Quinn v. Aetna Life & Casualty Co.*, 616 F.2d 38, 41 (2d Cir.1980) (abstention improper unless "complex and unsettled issues of state law, whose resolution might well affect broad policies of the state," are involved). Fur-

thermore, if it is proper to stay this case pending the final result in a state action, it would be necessary to stay every federal action involving an attorney malpractice claim being litigated in state court.

Although the Supreme Court recognized only these three categories of abstention, it also endorsed the general principle that in proper circumstances, "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," could justify the stay or dismissal of a federal action. 424 U.S. at 817, 96 S.Ct. at 1246 (*quoting Kerotest Mfg. Co. v. C–O– Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). The Court emphasized, however, that "the circumstances permitting [a stay or] dismissal of a federal suit ... for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." Although such "exceptional" circumstances "do nevertheless exist," "[o]nly the clearest of justifications" will warrant a stay or dismissal on this basis. 424 U.S. at 818–19, 96 S.Ct. at 1246–47.

In *Colorado River* the Supreme Court identified three specific factors that a court may consider in assessing the appropriateness of a stay on grounds of wise judicial administration: (1) "the inconvenience of the federal forum"; (2) "the desirability of avoiding piecemeal litigation"; and (3) "the order in which jurisdiction was obtained" by the various courts. 424 U.S. at 818, 96 S.Ct. at 1247. Expanding upon the second factor, the Court in *Moses H. Cone* stated:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismiss at all.... Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

460 U.S. at 28, 103 S.Ct. at 943. The opinion in *Moses H. Cone* also elaborated on the third factor identified in *Colorado River*, the order in which the actions were brought, by holding that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." 460 U.S. at 21, 103 S.Ct. at 940.

While the decision to stay an action must involve a "careful balancing" of these factors rather than implementation of a "mechanical checklist," *see Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937, consideration of these three factors demonstrates that Richard has not established the exceptional circumstances necessary to justify a stay. The first factor does not weigh in favor of a stay, since there is nothing in the record to suggest that this court is less convenient for the parties than the New York Supreme Court. The second factor, the desirability of avoiding piecemeal litigation, counsels against granting this motion. Indeed, the cases cited by Richard suggest that, under New York law of *res judicata*, it may be more likely that her state court claims of malpractice will be resolved by this court's decision on Rosenman's fee claim than *vice versa*. *See, e.g., Chisholm- Ryder Co. v. Sommer & Sommer*, 78 A.D.2d 143, 434 N.Y.S.2d 70 (4th Dep't 1980); *Nat Kagan Meat & Poultry v. Kalter*, 70 A.D.2d 632, 416 N.Y.S.2d 646 (2d Dep't 1979).

The third factor cited in *Colorado River* —the question of which action was filed first and has progressed furthest—also requires the denial of a stay in this case. Rosenman's petition was filed in June, 1983, nearly two years before Richard commenced her state court action. Discovery in this action is nearly complete. The extent of progress in the state court action is disputed by the parties, but the pending appeal to the Appellate Division and absence of an answer to the complaint are some evidence that a decision may well be reached first in this court.

Richard has suggested that under New York law a decision in this case will be *res judicata* in the pending malpractice suit in

state court, and thus that denial of a stay here will deprive her of a state forum in which to try her malpractice claims. This is inappropriate, she argues further, because attorneys' fee disputes are of such "special interest and concern to the courts," *see In re Schanzer's Estate*, 7 A.D.2d 275, 182 N.Y.S.2d 475, 479–80 (1st Dep't 1959), *aff'd*, 8 N.Y.2d 972, 204 N.Y. S.2d 349, 169 N.E.2d 11 (1960), that they should be tried in state court. While it is true that under New York law the claim of malpractice is precluded by a judicial determination fixing the value of a professional's services, *see Chisholm-Ryder Co. v. Sommer & Sommer*, 78 A.D.2d 143, 434 N.Y.S.2d 70 (4th Dept.1980); *Nat Kagan Meat & Poultry v. Kalter*, 70 A.D.2d 632, 416 N.Y.S.2d 646, 647 (2d Dep't 1979), it is equally possible that in the posture of this case the federal determination may establish unconscionability which would go far to establish malpractice.

Richard's claims against Rosenman have been out, then in, and again out of this ancillary proceeding. Initially not an issue, the counterclaims filed by Richard brought in the substance of a malpractice claim in terms of breach of contract and fiduciary duty. Then these counterclaims were dropped, and an independent action initiated in state court. After removal, Richard successfully sought remand. Given the prior decision of this court preserving the issue of unconscionability with respect to the retainer agreement, the apparent election made by Richard was to seek a jury trial in state court on her malpractice case, recognizing the probable *res judicata* effect of this court's action in the present case. Indeed, this action may either establish or eliminate the state proceeding.

After Richard's election and successful motion to remand, the subsequently filed state action cannot now serve to stay this case in order to have the possibly preclusive issues tried by a jury. In analogous circumstances it has been held that the potential effects of a decision in a non-jury case on subsequent actions where a jury may be demanded does not deprive a party of the right to trial by jury. *See SEC v. Commonwealth Chemical Sec., Inc.*, 574 F.2d 90, 97 (2d Cir.1978) (the "potential collateral estoppel effects in other [jury] actions" of the Court's non-jury decision in an equitable action for injunctive relief do not entitle defendant to a jury trial); *SEC v. Asset Management Corp.*, 456 F.Supp. 998, 1000 (S.D.Ind.1978) (same).

Presumably, Richard could have kept her malpractice claims before a jury in this court, for Rosenman sought to defeat the remand. Having declined to seek a jury trial in federal court, Richard cannot now ask the court to stay this action to allow her a jury trial in state court.

In view of the foregoing discussion, it is unnecessary to address Petitioner's defense of laches to Richard's request for a stay. Respondent's motion to stay all proceedings in this case pending a final judgment in the state court action is denied.

IT IS SO ORDERED.